# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

NICOLE M. BLANCHETTE,

          **Plaintiff,**

    **v.**                        **Case No. 18-CV-203**

NANCY A. BERRYHILL,

          **Defendant.**

# DECISION AND ORDER

## PROCEDURAL HISTORY

Plaintiff Nicole M. Blanchette alleges that she has been disabled since November 22, 2009, due to depression, bipolar, liver damage, hepatitis B and C, and drug and alcohol disorders. (Tr. 68.) In June 2011 she applied for disability insurance benefits. (Tr. 130-36.) After her application was denied initially (Tr. 86-88) and upon reconsideration (Tr. 89-91), a hearing was held before an administrative law judge (ALJ) on June 12, 2013 (Tr. 29-65). On September 10, 2013, the ALJ issued a written decision, concluding that Blanchette was not disabled. (Tr. 13-24.) The Appeals Council denied Blanchette's request for review on October 9, 2014. (Tr. 1-3.)

On December 12, 2014, Blanchette filed an action in this court challenging the ALJ's September 2013 decision. (Tr. 699.) This court remanded the matter for further proceedings and ordered that the ALJ:

> must reconsider the degree of Blanchette's limitation in maintaining concentration, persistence, and pace; must reconsider the portions of the decision that rely on Blanchette's activities of daily living; must consider how and to what extent Blanchette's documented OCD and personality disorder affects the limitations included in the RFC determination; and must reassess the credibility of Blanchette's testimony regarding the intensity, persistence, and limiting effects of her mental impairments.

(Tr. 695-96.) The Appeals Council remanded the matter to an ALJ to offer Blanchette the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision. (Tr. 679-81.)

A hearing was held before an ALJ on September 14, 2016 (Tr. 650-78), and the ALJ issued a written decision on December 28, 2016, again concluding that Blanchette was not disabled (Tr. 617-36). The Appeals Council denied Blanchette's request for review on December 6, 2017. (Tr. 607-09.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge. (*See* ECF Nos. 7, 8.) This matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Blanchette "has not engaged in

substantial gainful activity since November 22, 2009, the amended alleged disability onset date[.]" (Tr. 620.)

The analysis then proceeds to the second step, which considers whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 118, 1121 (7th Cir. 2014). The ALJ concluded that Blanchette has the following severe impairments: "liver disease, history of hepatitis B and C, depression, post-traumatic stress disorder, alcohol and drug use disorders, obsessive compulsive disorder, personality disorder and borderline intellectual functioning[.]" (Tr. 620.)

At step three, the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d) and 416.926) (called "the listings").[1] If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the

---

[1] All citations to the listings and regulations in this opinion are to those that were in effect at the time of the ALJ's decision.

claimant's impairment or combination of impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step.

The ALJ found that Blanchette's "impairments, including the substance use disorders, meet section 12.04 of [the listings]." (Tr. 620.) Having reached that conclusion, the ALJ typically would end the sequential evaluation process and conclude that Blanchette is disabled. However, if it is found that there is medical evidence of a substance abuse disorder, the ALJ must determine if the substance abuse disorder is a contributing factor material to the determination of disability. (Tr. 619.) "An individual shall not be considered to be disabled for purposes of [the Social Security Act] if alcoholism or drug addiction would … be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Substance abuse disorders are "material to the determination of disability if the claimant would not meet [the Commissioner's] definition of disability if [she] were not using drugs or alcohol." SSR 13-2p. "When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (citations omitted).

The ALJ concluded that, if Blanchette stopped the substance use, her "severe physical and mental impairments would continue to cause more than a minimal effect on her ability to perform basic work activities." (Tr. 622.) However, the ALJ concluded that

she "would *not* have an impairment or combination of impairments that meets or medically equals any of the impairments listed in [the listings]," including section 12.04. (Tr. 622-64.) (Emphasis added.) Having found that Blanchette's impairments would not satisfy any of the impairments listed in the listings if she stopped the substance abuse, the ALJ proceeded to the next step in the sequential evaluation process.

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the claimant's ability to perform both physical and mental work-related activities on a regular and continuing basis despite her impairments. *Moore*, 743 F.3d at 1121. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929, SSR 96-4p. In other words, the RFC determination is a function by function assessment of the claimant's maximum work capability. *Elder v. Asture*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that

> if [Blanchette] stopped the substance use, [she] would have the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] is limited to unskilled work; she is limited to jobs having only occasional decision making, changes in work setting and interaction with coworkers; and she is limited to jobs having no interaction with the public.

(Tr. 624.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work.

20 C.F.R. §§ 404.1526, 416.965. The ALJ found that Blanchette would be unable to perform her past relevant work as a billing clerk. (Tr. 634.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. At this step the ALJ concluded that, considering Blanchette's age, education, work experience, and RFC, there would be jobs that exist in significant numbers in the national economy that Blanchette could perform if she stopped the substance abuse. (Tr. 634.) In reaching that conclusion the ALJ relied on testimony from a vocational expert, who testified that a hypothetical individual of Blanchette's age, education, work experience, and RFC, could perform the requirements of assembler, hand packager, and inspector. (Tr. 635.)

After finding that Blanchette could perform work in the national economy if she stopped the substance abuse, the ALJ concluded:

> [Blanchette]'s substance use disorder is a contributing factor material to the determination of disability because [she] would not be disabled if she stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, [Blanchette] has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 635.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

**ANALYSIS**

The only heading in Blanchette's brief reads, "The substantial evidence does not support the finding that [Blanchette]'s history of substance use is a material factor in her disability." (ECF No. 15 at 14.) Although it's unclear, it appears that Blanchette is contending that the ALJ erred (1) in failing to find that she met Paragraph C of section 12.04 of the listings, (2) in his RFC determination, and (3) in his evaluation of the medical opinion evidence.

## I.  Paragraph C of Section 12.04 of the Listings

Blanchette contends that the ALJ "conceded that if substance use was stopped [she] would still experience one to two episodes of decompensation." (ECF No. 15 at 16.) She argues that "[t]hat finding satisfies the 'paragraph C' criteria of Listing 12.04." (*Id.*) In response, the Commissioner argues that "[o]ne-to-two episodes since the alleged onset date in 2009 falls far short of" the requirements of Paragraph C. (ECF No. 16 at 8.)

Section 12.04 of the listings generally addresses affective disorders. A claimant meets section 12.04 if she satisfies the requirements of either Paragraphs A and B *or* the requirements of Paragraph C.  Paragraph C requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the

environment would be predicated to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C). "The term repeated episodes of decompensation, each of extended duration … means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id*. § 12.00(C)(4).

In analyzing the requirements of *Paragraph B* of section 12.04, the ALJ found that Blanchette "would experience one to two episodes of decompensation if the substance use was stopped," noting that she "was hospitalized in February/March 2011 and then again in August 2016." (Tr. 624.) Blanchette does not contend that she experienced any additional episodes of decompensation, and her hospitalizations in February/March 2011 and August 2016 do not amount to three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. As such, the ALJ did not err in failing to find that Blanchette established the presence of the Paragraph C criteria of section 12.04 of the listings.

## II. RFC Determination

Blanchette argues that "the evidence does not establish that [her] co-occurring mental disorder(s) would improve to the point of nondisability in the absence of [drug and alcohol abuse]." (ECF No. 15 at 16.) Specifically, she contends that

[t]here is no evidence in the record to support a finding that her severe mental disorders … improve or would improve if she were to stop using

drugs or alcohol. The fact is that [she] has stopped using drugs or alcohol for prolonged periods of time between relapses without any evidence of improvement in her co-occurring mental health conditions.

(*Id.*)

Although Blanchette does not specify which portion of the ALJ's decision she is challenging, the court understands her to be challenging the ALJ's RFC determination. The ALJ determined that

[i]f Blanchette stopped the substance use, [she] would have the [RFC] to perform light work … except [she] is limited to unskilled work; she is limited to jobs having only occasional decision making, change in work setting and interaction with coworkers; and she is limited to jobs having no interaction with the public.

(Tr. 624.)

In making his RFC determination, the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2, *see also* 20 C.F.R. 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p, at *2.

The ALJ concluded that, if Blanchette stopped the substance abuse, her "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence of record." (Tr. 625-26.) The ALJ found that Blanchette's "mental and social function and ability to tend to her daily activities improves when she is not actively using substances." (Tr. 626.) As a result, the ALJ did not find credible Blanchette's testimony that her mental health conditions were work preclusive.

In support of his conclusion, the ALJ considered Blanchette's testimony about the effect of alcohol and drug use on her mental health conditions. At the June 2013 hearing Blanchette testified that she believed she was unable to work because she was on medications for mental health issues, thyroid, stomach and bladder problems, and has problems being around people:

 [ALJ:] … Tell me in your words why you feel you're not able to work and why you applied for these benefits.

[Blanchette:] With me being on medications and going to my appointed time to go to my appointments, I have difficulty when I'm on my medication and if I'm not on my medication. What was the question?

[ALJ:] Tell me why you feel you can't work.

[Blanchette:] And I have problems being around people. I spend a lot of my time in my room. I don't socialize with anybody.

[ALJ:] Why not?

[Blanchette:] I don't -- it's hard for me to be around people. I don't – I'm not able to talk to people. And then when I have episodes I get really angry, so like certain things set me off. It's just hard for me to socialize with other people.

(Tr. 44.) However, at the September 2016 hearing, she testified that she is not as angry when she is not using drugs and alcohol:

[ALJ:] Do you notice a difference in yourself when you think about how you're doing at times when you're using drugs and alcohol versus periods of time when you're not using drugs or alcohol? Is there a difference in you in person?

[Blanchette:] Yes. I'm not as angry because I get real angry when I drink alcohol and I get really agitated by people.

[ALJ:] Okay.

[Blanchette:] And I'm not -- I mean I do when I'm not drinking, but not as bad as when I am. I mean neither one of my kids want to be around me when I'm drinking. It's that bad, so --

[ALJ:] Okay.

[Blanchette:] And my parents won't talk to me or anything.

[ALJ:] Okay.

[Blanchette:] Because I used to be a severe alcoholic and then I was clean for three years from everything, drugs and alcohol

[ALJ:] Okay.

[Blanchette:] And then I started back up, it just ruined my life with my family and my kids, so there's *a big difference* when I'm using and when I'm not as far as my family goes.

(Tr. 662-63.) (Emphasis added.) She also testified that her prescribed medications are helpful when she takes them like she's supposed to. (Tr. 659-60.)

The ALJ also found that "the treatment notes do not fully support [Blanchette's] allegations of persistent side effects" from her medications. (Tr. 628.) At the September 2016 hearing Blanchette testified that she would be unable to work a full-time job because of her medications:

> [ALJ:] You don't think you could do the job full-time?
>
> [Blanchette:] No. Not right now with these medications.
>
> [ALJ] All right. Are there side effects you have with the medications?
>
> [Blanchette:] Yes. I get really tired. I have to take naps and then I don't know if it's from the medications or not, but I hallucinate and I hear things, but I've been -- that's been going on for many, many years.

(Tr. 665.) Her testimony was consistent with what she had written in her November 2015 function report regarding her medication: "I deal [with] severe side effects such as drowsiness, dizziness, which happens frequently, nausea and weight gain. A concern of mine if I do work [is that] I may not be able to complete a task if I [am] experiencing these." (Tr. 909.) However, medication management treatment notes from late 2014, 2015, and early to mid-2016 overwhelmingly reflect no evidence of medication side effects. (Tr. 1083-1103.)

The ALJ also found that, "while Blanchette reports hallucinations, they respond to medication therapy and are worse with substance use." (Tr. 628.) Blanchette testified that

she has "had hallucinations since [she] was younger[.]" (Tr. 669.) However, during a March 2011 hospitalization, Blanchette reported that "while she experienced hallucinations, [they] were worse when she is using substances and do improve with medication." (Tr. 628; *see* Tr. 249; *see also* Tr. 665.)

The ALJ provided reasons for his conclusion that Blanchette's statements concerning the intensity, persistence and limiting effects of her mental health conditions are not entirely consistent with the objective medical and other evidence of record. Blanchette does not explain why the ALJ's conclusion was "patently wrong." *See Horr v. Berryhill*, 2018 WL 3634894, at *3 (7th Cir. July 31, 2018).

In addition to evaluating Blanchette's subjective symptoms, the ALJ considered her ability to engage in activities of daily living. Specifically, the ALJ found that, when abstaining from substance use, Blanchette is able to care for her personal hygiene, perform some household chores, prepare simple meals, use public transportation, shop with her mother for hours at a time, watch television, read, and take her daughter to the park or beach. (Tr. 623, 628-29; *see* Tr. 166-75, 909-17.) The ALJ stated that "[t]hese activities, while not conclusive proof of an ability to perform full-time work, are compatible with a capacity for the unskilled work articulated in the assigned residual functional capacity." (Tr. 629.) The ALJ concluded that "[Blanchette's] ability to perform daily tasks consistent with unskilled work is strong evidence that her mental health

conditions, when she is not actively using substances, are not work preclusive and allow for the significantly reduced [RFC]." (*Id.*)

Blanchette argues that "[o]ne would be hard-pressed to understand how such limited function would constitute improvement of any of [her] co-occurring mental health impairments." (ECF No. 15 at 15.) However, the ALJ's conclusion is supported by medical opinion evidence in the record—specifically, the opinions of state agency psychological consultants Craig Childs, Ph.D., and Joan Kojis, Ph.D. Dr. Childs, after noting that Blanchette has a history of an ability to hold down a job for a long period of time when substance free, opined that she can perform the basic mental demands of unskilled work when sober. (Tr. 83.) Dr. Kojis also opined that if Blanchette remained sober she could sustain basic work activities and should be able to work as demonstrated by her work history. (Tr. 469.)

The ALJ also considered the opinion of consultative examiner Timothy Wiedel, Ph.D. Dr. Wiedel opined in part that Blanchette would have moderate limitation in (1) understanding, remembering, and carrying out simple instructions, (2) responding appropriately to supervisors and coworkers, and (3) concentration and attention. (Tr. 439-40.) The ALJ concluded that

> Dr. Wiedel's assessment is not wholly inconsistent with the unskilled [RFC] capacity as it does not preclude understanding, remembering and carrying out simple instructions when the claimant is not using substances. As such, it is in keeping with the evidence showing improvement in [Blanchette's] mental and daily functioning with sobriety and the benefits she receives from medication.

(Tr. 632.)

Blanchette attempts to argue that her hospitalizations in February/March 2011 and August 2016 "are strong evidence for a finding that [drug abuse and alcoholism] is not material in this case." (ECF No. 15 at 16.) She states that the ALJ "recognized … that those hospitalizations were due to depression and suicidal thoughts." (*Id.*) However, Blanchette mischaracterizes the ALJ's decision. The ALJ wrote that "*[w]hile those hospitalizations were associated with substance abuse*, they also involved depression and suicidal thoughts." (Tr. 624.) (Emphasis added.) In February 2011 Blanchette was hospitalized after attempting suicide by overdosing on a combination of medications. (Tr. 252.) Her mood was dysphoric and she expressed a sense of hopelessness, helplessness, and suicidal thoughts. (Tr. 255.) Her urine tested positive for benzodiazepines, cocaine, opiates, and cannabinoids. (Tr. 258.) In March 2011 Blanchette was hospitalized for opiate dependency. (Tr. 245.) She was abusing Klonopin, Xanax, Opana, OxyCotin, and heroin. (*Id.*) Her mood was depressed. (Tr. 249.) She reported experiencing visual and auditory hallucinations; however, the report states that her hallucinations were worse when she is using drugs and somewhat improved with medications. (*Id.*) In August 2016 Blanchette was hospitalized after being found wandering around a food store in an altered mental state. (*See* Tr. 1113.) She admitted to using cocaine (Tr. 1175), and her urine tested positive for opiates and benzodiazepines (Tr. 1191).

Given all of the above, the court finds substantial evidence in the record supports the ALJ's RFC determination.

## III.  Evaluation of Medical Opinion Evidence

### A.  Colosimo's Opinion

Blanchette's therapist, Vicky Colosimo, MA, LPC, wrote a letter dated April 29, 2015, on Blanchette's behalf "in hopes that it may strengthen [her] social security case." (Tr. 1364-65.) Colosimo wrote that Blanchette's "depression is severe with very little progress even with medication and therapy[.]" (Tr. 1364.) She opined that Blanchette "may never be able to be employed given her mental state and the medications she will need to be on throughout her life." (Tr. 1365.)

At the time of the ALJ's decision the regulations provided that an ALJ should consider a number of factors and assign weight to the medical and other source opinions of record. SSR 06-3p. As a licensed counselor, Colosimo qualifies as an "other source," and her opinion is not entitled to controlling weight. SSR 06-3p. The factors the ALJ should consider in weighing "other source" opinions include: how long the source has known the claimant; how frequently the source has seen the claimant; how consistent the source's opinion is with other evidence in the record; the degree to which the source presents relevant evidence to support an opinion; how well the source explains her opinion; whether the source has a specialty or area of expertise related to the claimant's impairment(s); and any other factors that tend to support or refuse her opinion. *Id.* The

ALJ gave little weight to Colosimo's opinion because, among other reasons, her "assessment ignores the effects of [Blanchette]'s substance use on her functional abilities[.]" (Tr. 633.)

Blanchette argues that the ALJ "is clearly incorrect that Ms. Colosimo ignored [Blanchette]'s substance abuse issue." (ECF No. 15 at 17.) Blanchette contends that Colosimo "indicated that [Blanchette] has been a patient at Renew Counseling Services for several years receiving both [Alcohol and Other Drug Abuse] services and mental health services, a clear indication that Ms. Colosimo wasn't overlooking or ignoring the issue of substance abuse." (*Id.*) Blanchette concludes that "Ms. Colosimo was fully cognizant of [Blanchette]'s substance use issues[,]" and "[t]he information [Colosimo] provides as to the disabling effects of [her] co-occurring mental health impairments along with the side effects of her psychotropic medications establish the fact that [her] co-occurring mental disorder(s) have not improved to the point of nondisability in the absence of [drug and alcohol abuse]." (*Id.* at 18.)

However, as the Commissioner points out, Blanchette mischaracterizes the ALJ's analysis of Colosimo's opinion. "The ALJ found that Ms. Colosimo's 'assessment ignore[d] the effects of the claimant's substance use on her functional abilities,' not that Ms. Colosimo was *unaware* that [Blanchette] had a substance abuse disorder." (ECF No. 16 at 5.) (Emphasis and first alteration in original.) The ALJ stated that Colosimo's opinion did not address Blanchette's ability to function in the absence of substance abuse, "which

is an issue that cannot be ignored for purposes of analyzing [Blanchette]'s allegations."

(Tr. 633.)

The court finds that it was reasonable for the ALJ to give little weight to Colosimo's

opinion.

## IV.   Other Medical Opinion Evidence

Blanchette appears to argue that the ALJ also erred by giving only partial weight

to the opinions of Drs. Wiedel, Childs, and Kojis. (ECF No. 15 at 18-19.) These arguments

are copied and pasted word-for-word from Blanchette's April 2015 brief, and their

reasoning does not necessarily apply to the ALJ's December 2016 decision. Nonetheless,

the court will address these arguments to the extent that it is able.

### 1.   Dr. Timothy Wiedel

Dr. Wiedel examined Blanchette at the request of the state agency on September

30, 2011. (Tr. 434-40.) He stated:

> This examiner feels that Ms. Blanchette would have moderate limitation in
> understanding, remembering, and carrying out simple instructions. She
> seems to be having some information processing problems. The examiner
> feels Ms. Blanchette would have some moderate limitations in terms of
> responding appropriately to supervisors and coworkers. She is someone
> [sic] anxious in interpersonal relationships. She is seen as having moderate
> limitation in concentration and attention. At this point, Ms. Blanchette
> seems to be showing a lot of fatigue. The examiner is unclear why as to
> whether it is due to her medical issues, possible substance abuse, or
> depression. It is clearly [sic] she would have marked limitation in keeping
> up with the work pace given that she is not even doing chores in the home.
> The examiner feels Ms. Blanchette would have moderate to marked
> limitation in withstanding routine work stressors and perhaps would start
> using again if she is not already.

(Tr. 439-40.)

Blanchette argues that "[n]otwithstanding Dr. Wiedel's opinion that [Blanchette] had marked limitation in keeping up with a work pace and would have a moderate to marked limitation in withstanding routine work stressors the ALJ substituted his own opinion that she has only moderate limitations because of mental impairments." (ECF No. 15 at 18.) (Citing the ALJ's September 2013 decision.)

In his December 2016 decision the ALJ gave Dr. Weidel's opinion some weight and addressed why he did not include in his RFC determination Dr. Wiedel's opinion that Blanchette has marked difficulties with work pace and stressors:

> [W]hile Dr. Wiedel identified information processing problems, moderate problems with attention and concentration, and marked difficulties with work pace and stressors, Dr. Wiedel's examination of [Blanchette] occurred in a context of uncertainty regarding her substance use. He indicated that it was possible that she was using again [Tr. 439-40] and … contemporaneous treatment notes suggest that her urine samples showed alcohol [Tr. 536]. Further, to the extent that the claimant experiences information processing deficits or difficulties with stress and pace when she is sober, they are no more than moderate as evidenced by the improvement in her function and are addressed in the unskilled [RFC] capacity with limitations on workplace change and decision making.

(Tr. 632.) Blanchette does not dispute the ALJ's findings that she experiences no more than moderate difficulties with stress and pace when she is sober. As such, the court finds that the ALJ did not err in giving some weight to Dr. Wiedel's opinion.

### 2. Drs. Craig Childs and Joan Kojis

Blanchette also appears to argue that the ALJ improperly rejected the opinions of State Agency psychological consultants Drs. Childs and Kojis, who opined that Blanchette had "marked" limitations of function. (ECF No. 15 at 18-19.) In their Mental RFC assessments, Drs. Childs and Kojis opined that Blanchette had marked limitations in her ability to: "maintain attention and concentration for extended periods" (Tr. 81, 466); "perform activities within a regular schedule, maintain regular attendance, and be punctual within customary tolerances" (Tr. 82, 466); and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (Tr. 82, 467).

The ALJ gave partial weight to the opinions of Drs. Childs and Kojis because, among other reasons, their assessments appeared "to be in response to [Blanchette]'s substance use as they found [Blanchette] incapable of performing unskilled work when using substances, but capable of performing unskilled work when sober." (Tr. 631.)

Substantial evidence supports the ALJ's reasoning. In his RFC assessment Dr. Childs explained that Blanchette would have marked sustained concentration and persistence limitations "*due to use of substances* that would significantly reduce her ability to maintain a regular attendance schedule and sustain concentration and attention during an 8 hour work day." (Tr. 82.) (Emphasis added.) Dr. Childs concluded:

When substance abuse is taken into account [Blanchette] is not capable of even unskilled work. However, she has shown a [history of] ability to hold down a job for a long period of time when substance free. [Drug and alcohol abuse] is found to be material in this case. [Blanchette] is capable of performing the basic mental demands of unskilled work when sober.

(Tr. 83.) And in her RFC assessment Dr. Kojis explained:

[Blanchette] is probably not able to sustain work at this time, as the [consultative examiner] suggests, however, it is due to her Polydrug dependency *not her mental issues*. If she remains sober she should be able to work as demonstrated by her work history. Her hospitalizations were for [alcohol or other drug abuse] issues as was her incarceration and that is what is creating the instability in her life and inability to sustain working.

(Tr. 469.) (Emphasis added.) She concluded that "[drug and alcohol abuse] is material and [Blanchette] could sustain basi[c] work activities [consistent with] her ability and interests if clean/sober." (*Id.*)

The ALJ did not err in finding that Blanchette's substance use contributed to Drs. Childs's and Kojis's opinions that she had marked sustained concentration and persistence limitations.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **affirmed** and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of November, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge